MAX WARSHOW *vs.* A. ELWOOD AND SON ET ALS.

Third Judicial District, New Haven, June Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, Js.

A court of justice will not aid either party to enforce a contract to cheat and defraud the public.

In the present case each of the parties agreed to contribute money to buy inferior or worthless goods, and, by means of false labels and other misrepresentations, to sell them to the public as "bankrupt stocks" made by first-class, reputable manufacturers. In an action by one of the contracting parties against the others for the appointment of a receiver, an accounting, and other equitable relief, it was *held* that the trial court very properly dismissed the case of its own motion after the real character and effect of the contract had become apparent.

Argued June 7th—decided July 12th, 1910.

ACTION for the appointment of a receiver to dispose of the balance of a stock of paints, wall-paper and painters' and decorators' supplies, alleged to have been purchased by the plaintiff and shipped to the defendants for sale at public auction as bankrupt stock, also for an accounting and other relief, brought to and tried by the Superior Court in Fairfield County, *Burpee, J.;* facts found and cause dismissed upon the ground that the contract made by the parties was opposed to public policy and entitled neither party to any relief, from which judgment the plaintiff appealed. *No error.*

The plaintiff had been engaged in the wholesale and retail business of buying and selling paint, wall-paper, and painters' and decorators' supplies in Stamford.

The defendant A. Elwood & Son was a corporation located in Bridgeport, and was engaged in the business of a public auctioneer. Arthur Elwood, the president of this corporation, had been for some years engaged in the business of an auctioneer. Anderson, another defendant, was engaged in the real estate and insurance business in Bridgeport, and the other defendant, Edward E. Bursey, had been a painter for twenty-three years.

It further appeared that this plaintiff proposed to the defendants to make, and they did make, an agreement with him to engage in buying paints, varnishes, and painters' and decorators' supplies of an inferior quality, marking the goods with labels bearing the names of reputable manufacturers, who were not the makers thereof, which labels also indicated that these goods were of a superior quality, and then advertising and selling these goods at public auction as "bankrupt stock," whereas they were not bankrupt stock; and by these and other deceitful means cheating and deceiving the public generally. Some of these other deceitful means were that of buying and mixing with these cheaper and inferior goods some goods of first and second quality, so as to give the stock the appearance of a bankrupt stock. But by the agreement it was intended, as the plaintiff claimed and testified, that for the larger part of the stock he should buy the cheapest goods he could find, and that the defendants so instructed; and it was upon this class of goods that the false labels were put.

To further this scheme, it was also arranged that one of the defendants, Bursey, should take some of the goods to Hartford and open a store there, and offer them for

sale in the regular way; and after a few weeks the other defendants were to send a sheriff to attach the goods and bring them back to Bridgeport to be sold as bankrupt stock.

It was agreed between the parties that each should at the outset contribute to the enterprise $250; that they should bear equally the cost of the goods bought, and the incidental expenses, and should repay the plaintiff for money advanced to the business by him in excess of his share; that they should share the net profits equally, and at the termination of the business the capital then remaining should be divided between them. The defendants Elwood & Son and Anderson each paid the plaintiff $250 in cash, and these two defendants were led by the plaintiff to believe that Bursey had also done the same thing. The defendant Bursey in fact gave the plaintiff nothing but his note for $250, and these two, Bursey and the plaintiff, made an agreement between themselves, which they concealed from the other parties, whereby it was intended that Bursey should not pay this note and should be relieved from contributing his share of the common capital. Bursey has never paid the note or any money.

It further appeared that in pursuance of the agreement between the plaintiff and the defendants the plaintiff bought a quantity of paint and other merchandise from manufacturers and dealers and sent them to A. Elwood & Son. For these goods the plaintiff paid $3,600. Agreeably to the arrangement the plaintiff caused cans of paint and varnish so purchased to be labelled with labels which were not the labels of the makers of the goods, but were the labels of well-known and reputable makers, and they were adopted to induce, and it was intended that they should induce, the public to believe that this paint and varnish were of better quality than they were in fact. In so doing, and

in all other respects, the plaintiff fully performed his part of the agreement with the defendants.

It appeared further that the defendants, with full knowledge of the facts, received the goods sent them by the plaintiff, extensively advertised them as bankrupt stock, held several auction sales, and disposed of all they could, and in every way performed their part of the agreement heretofore stated according to its terms and intent.

From the sales of these goods the defendants received $1,829.15, and out of these sales the defendants paid the plaintiff in several payments about $950 and no more. Some of the paint and varnish bought by the plaintiff and delivered to the defendants and by them offered for sale were of so low grades that the makers thereof would not put their names on the cases, and the plaintiff therefore bought labels of other well-known and reputable makers of standard paint and varnish and caused them to be put on the cases. This was in accord with the agreement entered into by these parties, plaintiff and defendants.

It appeared that the defendants testified that when the agreement was made it was intended to buy only paints and varnishes of first quality, bearing labels of the well-known and reputable makers, C. M. Childs & Company and the Federal Varnish Company. The plaintiff testified that by their agreement it was intended that he should buy for the larger part of the stock the cheapest goods he could find, and that the defendants so instructed him; and it was upon these goods that the false labels were placed. It appears that in all other essential particulars the defendants agreed with the plaintiff concerning the intention and terms of the contract.

Among other things, it appears to have been admitted by the defendants that when the paints and var-

nishes were delivered to them they saw that most of them did not bear the label of either of the manufacturers just named, but names of those who, they knew, had not made these goods. They, nevertheless, without remonstrance, accepted them as they were and sold what they could of them. After the first sale, they tested some of these goods and found they were of the lowest grade. Others were worthless material, and the purchasers of them were deceived and defrauded, and complained about it. And afterward they continued, with the plaintiff's knowledge and assistance, to try to sell them at auction and private sale, in the same cans and with the same labels. Some of the labels used were those of well-known and reputable makers, which they used on second or lower qualities only; some were the labels of reputable makers who had gone out of business sometime before.

It further appeared that before the institution of this suit the plaintiff gave the defendants notice of his intent to terminate said agreement and enterprise and to close and wind up the same.

It appeared that no profits were made in the business, and that there are no existing debts. The plaintiff claimed in respect to the judgment to be rendered that the defendants should be required to contribute their shares of the costs and expenses which he had paid on account of the business, amounting to about $2,600.

Upon the state of facts above recited the court below refused to interfere in behalf of either party, or to give either party any remedy, and dismissed the action without costs. From this decision the plaintiff appeals.

*George P. Rowell,* for the appellant (plaintiff).

*Edward K. Nicholson* and *Charles H. Shapiro,* for the appellees (defendants).

ROBINSON, J. This court, upon the facts as they appear in this case, will not discuss the question of whether this agreement, which is made the basis of recovery here, is against public policy and good morals. Assuming the facts as found by the court to be true, it is not even debatable. The contract and the whole enterprise, from its inception to the close of it, is stamped with fraud, corruption, and bad faith toward the public by all the parties, plaintiff and defendants; and not only that, but there was bad faith and deceit on the part of this plaintiff toward his equally corrupt associates, and we cannot forbear to express our astonishment that any litigant should so far presume upon the patience of this court as to present and urge an appeal of this character.

A judge of the Superior Court found a set of facts mainly upon the admissions of the plaintiff and the defendants themselves, and this state of facts was so bad, and showed such shameless corruption and fraud, as to lead that judge to take the initiative, and of his own motion thrust this plaintiff out of court, and in doing so to tell him that he had violated conscience and good faith in his conduct in the matters in controversy; that he did not come into court with clean hands; that he had acted in bad faith, both with his associates and with the public, who were or might be affected by the consequences of this scheme, which was corrupt in its origin and corrupting in its tendencies; and he refused to interfere in the plaintiff's behalf or to give him any remedy, and dismissed the action without costs to any party. After this disposition of the action, this plaintiff appeals.

The court makes a full finding of facts established by the evidence. No errors are claimed in the admission or rejection of evidence, but the plaintiff bases sixteen of his reasons of appeal upon claimed errors of the judge

below in finding facts as set forth in certain paragraphs. He asks to have the finding corrected in these respects. There is no warrant for the request, and no reason to direct any such corrections.

The plaintiff also claims error in the refusal of the court to find agreeably to the plaintiff's proposed finding of facts in one hundred and twenty-one paragraphs thereof, as to sixty-nine of which the plaintiff's claim is absolutely baseless. The judge either placed them in his finding, or marked them proven on the plaintiff's proposed finding. As to the balance of them, there is nothing whatever to indicate that they were improperly refused.

The plaintiff has taken one hundred and thirty-eight exceptions to the judge's finding of facts and his refusal to find facts. We have examined the plaintiff's proposed finding and the judge's finding, also the evidence sent to this court, and we find nothing therein to warrant these criticisms, and no reason to encumber the record with them. They are labored and frivolous, without even a shadow of merit; and we cannot condemn too emphatically such exhibition of misguided professional zeal.

Another claim is that the Superior Court erred in dismissing this action under the evidence. If the plaintiff intends this for an invitation to this court to review all the evidence for the purpose of determining all of the questions that are raised here, he should know that he has started upon a fruitless quest. The Superior Court has found the facts, and those facts we will treat as the facts, unless the court has adopted some erroneous rule of law in reaching its conclusion. None is pointed out to us, and it is quite apparent there is none. If the plaintiff means that the Superior Court erred in dismissing this action, upon the facts found, we would repeat what we said in the beginning, that, assuming

the facts to be as found by the Superior Court, that question is not debatable.

There is no error.

In this opinion the other judges concurred.